IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

GUINNESS WORLD RECORDS LIMITED,    )
                                   )
               Plaintiff,          )
                                   )
     v.                            )    No. 09 C 2812
                                   )
JOHN DOE, d/b/a WORLD RECORDS      )
ACADEMY,                           )
                                   )
               Defendant.          )

                      MEMORANDUM ORDER

     World Records Academy (to which this opinion will refer simply as "Academy," to avoid any contribution by this Court to the asserted confusion ascribed to Academy by the Complaint here) has filed a Fed. R. Civ. P. 12(b)(2) motion for its dismissal from this action brought against it by Guinness World Records Limited (referred to here simply as "Guinness" for the same reason). At this Court's request, both sides have tendered supplemental submissions to focus more sharply their respective positions as to Academy's Illinois-based involvement or noninvolvement.

     If all that were in issue in that respect were Academy's website, this Court would view it as a quite solid winner. On that score both sides have pointed to Jennings v. AC Hydraulic A/S, 383 F.3d 546 (7th Cir. 2004) as the only (and as a definitive) Seventh Circuit decision addressing the subject. This Court's view has always been that in these times of electronic communication, any ruling that would convert the

ubiquitous website into its owner's consent to be haled into court whenever the website has penetrated the forum in electronic terms would erase all of the lines that the courts--including the Supreme Court and, of course, our Court of Appeals--have traditionally marked out to define the rules of decision on in personam jurisdiction: If that erasure were to take place, everyone with a website might arguably be sued everywhere.

Thus it is that <u>Jennings</u> has joined other Circuits in holding that the mere maintenance of a passive website does not suffice to establish personal jurisdiction. As Judge Rovner put that proposition in <u>Jennings</u>, <u>id</u>. at 550 (citation omitted):

> With the omnipresence of the Internet today, it is unusual to find a company that does not maintain at least a passive website. Premising personal jurisdiction on the maintenance of a website, without requiring some level of "interactivity" between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country. This scheme would go against the grain of the Supreme Court's jurisprudence which has stressed that, although technological advances may alter the analysis of personal jurisdiction, those advances may not eviscerate the constitutional limits on a state's power to exercise jurisdiction over nonresident defendants.

While <u>Jennings</u> does not itself teach how far up the scale of activity a website may have to travel to cross the boundary into the area where it will be viewed as "interactive" (<u>id</u>. at 549), and thus as subjecting a party to suit in the forum, various District Courts here have addressed that issue. But because

2

District Court opinions and decisions are nonprecedential, they cannot perform the role that Justice Harlan (dissenting in Poe v. Ullman, 367 U.S. 497, 543 (1961))--and decades earlier, in like language, Justice Cardozo in The Paradoxes of Legal Science 96--described as generating "a series of isolated points pricked out" so as to produce a line of decision.

In any case, to return to Jennings, its controlling criterion for determining a website's interactivity--a website "on which consumers can order the defendant's goods or services" (383 F.3d at 549)--is absent from Academy's. Instead its website describes its goods and services to the general universe of its viewers and explains how they may initiate purchases if they choose to do so. As already indicated, if that were the only relevant consideration, in this Court's view it would clearly call for granting Academy's Rule 12(b)(2) motion.

But what about Academy's more direct and more focused marketing efforts looking to possible Illinois customers? Its current Mem. 5 describes that activity in these terms:

> As a means of gaining world-wide exposure, WRA sends a standard form email to any record holders the company discovers through press releases and a variety of other publicly accessible sources, such as websites. The record holders can span the globe, from New York, to Japan, to Australia. The purpose of the message is to inform a world record holder that their record has been listed on WRA's website. Further, the message indicates that the record holder may provide any pictures or video that the record holder may have of his or her achievement for placement on the WRA website. Lastly, the message states that the record

> holder may contact WRA and request a copy of his or her world record certificate. Notably, the contents of this standard email never change, regardless of whom the recipient may be.

To call such an email "standard" glosses over the fact that, unlike the website, it is a direct one-to-one solicitation. Except for the medium employed, that activity is no different in substance than that of a salesman making a direct call on a prospective customer. And if in-forum solicitation via such a direct salesman's visits were indeed involved, the fact that Academy's resulting Illinois sales proved to be minimal would not save it from being amenable to suit in this jurisdiction. There is, however, an important difference--evidenced here--between such a hypothetical salesman, who operates on a continuing basis within the forum but generates very few sales (perhaps a reflection of his poor salesmanship or of the lack of quality of his company's wares), and Academy's comparably minimal sales results derived solely from its electronic penetration of the forum market.

In this instance Academy's website plus its email efforts generated just three sales of its products to two Illinois residents, involving total gross sales of only $1,153. Although Guinness cites some cases that have drawn defendants into the forum for lawsuit purposes on the basis of nominal sales, this Court finds more persuasive the numerous other District Court cases that essentially apply the maxim de minimis non curat lex

4

(without necessarily stating it) to deny personal jurisdiction.

In that respect, although it has spoken in the context of general jurisdiction rather than specific jurisdiction, the opinion in Richter v. Instar Enters. Int'l, Inc., 594 F.Supp.2d 1000, 1007 (citing a host of cases to the identical effect) has put the matter simply:

> Where a defendant's sales in a state represent both a small percentage of a defendant's total sales and a small volume of sales over all, its contact with the forum state cannot be said to be substantial.

And although Guinness does urge the claimed existence of specific rather than general jurisdiction here, any description of this lawsuit as "arising out of or related to the defendant's contact with the forum" would really prove too much: It would hale any asserted infringer of a claimed intellectual property right into a remote forum based upon truly de minimis contacts.[1]

This Court need not deal with the substance of this lawsuit in deciding the current motion. But the principles that prevent its going forward here also appear to serve the ends of justice well. As to Academy, Illinois is truly a forum non conveniens.

Guinness may assertedly possess powerful trademarks, but whether those can extend to its ability to monopolize the words "world records"--words that regularly appear on sports pages and

---

[1] By contrast, the notion of specific jurisdiction fits comfortably the different kind of situation in which, for example, a company sells a product in the forum and the ensuing lawsuit stems from some defect in the product.

5

elsewhere--is, at the least, highly questionable.[2] For the issues posed by this litigation (issues that appear more complex than Guinness would have it) to be litigated fairly, the forum ought to be one in which the parties have at least a comparable (though not necessarily an equal) opportunity to do effective battle. That certainly does not appear to apply to the Northern District of Illinois, so that the need for an opportunity to try the merits on a level playing field is also served by granting Academy's motion.

## Conclusion

For the reasons articulated here, Academy's motion is granted. This action is dismissed--without prejudice to its reinstitution in an appropriate forum, of course.[3]

_____
Milton I. Shadur
Senior United States District Judge

Date: October 20, 2009

---

[2] Guinness' Complaint Ex. A comprises a whole series of registered trademarks, all of which are for "Guinness World Records"--none of them covers "World Records" alone. And the fact that Academy's metatags include, among other things, "guinness world records" does not of course automatically equate to its infringement of those marks.

[3] This opinion has not addressed Academy's effort to seek an award of attorneys' fees, advanced at the outset of its original Rule 12(b)(2) motion in claimed reliance on S Indus., Inc. v. Centra 2000, Inc., 249 F.3d 625, 626 (7th Cir. 2001) and Bretford Mfg., Inc. v. Smith Sys. Mfg. Co., 389 F.Supp.2d 983 (N.D. Ill.2005).

6